SHOCKEY TOURS, INC., and
James Fisher d/b/a Fisher
Buses, Appellants,

v.

MILLER TRANSPORTATION, INC.;
Lawrence Dulin, Jr. d/b/a L'Omare Shut-
tle Service; Southern Kentucky Bus
Lines, Inc.; Amazing America Tours,
Inc., d/b/a Travel America; Louis V.
Burton d/b/a V & K INC.; V & K INC.;
and Commonwealth of Kentucky, Trans-
portation Cabinet, Department of Vehi-
cle Regulation, Appellees.

Toby Tours, Inc., Appellant,

v.

Miller Transportation, Inc.; Lawrence Du-
lin, Jr. d/b/a L'Omare Shuttle Service;
Southern Kentucky Bus Lines, Inc.;
Amazing America Tours, Inc., d/b/a
Travel America; Louis V. Burton d/b/a
V & K INC.; V & K INC. and Common-
wealth of Kentucky, Transportation
Cabinet, Department of Vehicle Regula-
tion, Appellees.

Nos. 97–SC–511–DG, 97–SC–528–DG.

Supreme Court of Kentucky.

Dec. 17, 1998.

Roland P. Merkel, Frankfort, Julian M. Carroll, Frankfort, for Appellants.

Joseph H. Cohen, J. Gregory Troutman, Louisville, William E. Johnson, Frankfort, Edwin A. Logan, Frankfort, Jonathan Todd Shipp, Patrick B. Clayton, Frankfort, for Appellees.

Silas Toby, Appellee Pro Se.

WINTERSHEIMER, Justice.

This appeal is from an opinion of the Court of Appeals which reversed and remanded the decision of the Franklin Circuit Court which upheld the decision of the Department of Vehicle Registration granting Certificates of Public Convenience and Necessity to Shockey Tours, Fisher and Toby Tours. The Court of Appeals held that Shockey Tours, Fisher and Toby Tours did not hold a valid certificate at the time of their original application for authority from the Department of Vehicle Regulation, and consequently, were not entitled to the benefits of the so-called "grandfather clause" provided in KRS 281 .637(4).

The principal issue is whether the statutory grandfather clause can be applied so as to provide for the benefit of Shockey, Fisher and Toby in their current application for operating authority. Other questions presented are whether the issuance of three consecutive 180–day temporary grants of authority to Fisher is consistent with KRS 281.632(2) and whether the dismissal of protestants on the basis of lack of standing was proper.

Pursuant to the authority granted by the General Assembly, the Transportation Cabinet, Department of Motor Vehicles, regulates the operation of motor carriers including intrastate charter bus services. KRS Chapter 281. As part of the regulatory system, all motor carriers are required, prior to operation, to obtain from the Department operating authority, as represented by a certificate or permit, as the case may be. In the case of charter bus operations, an applicant may ei-ther seek a certificate of public convenience and necessity pursuant to KRS 281.630, or in the alternative, be "grandfathered" through the certificate process by compliance with KRS 281.637(4), which provides in pertinent part:

> Any person, or his respective predecessor in interest, engaged as of December 31, 1983, in the transportation of chartered parties or groups of persons with a common purpose, pursuant to a valid certificate issued by the department, authorizing the activity as an additional incident of conducting a regular route, common carrier passenger service, ... shall, upon application, be entitled to the issuance of a charter bus certificate to thereafter authorize a continuation of the same operations. Upon petition by any interested party, or upon its own motion if it so desires, the department shall require a hearing upon any such application, ... to establish an applicant's rights thereunder.

In April of 1993, Shockey, Fisher and Toby applied to the Department for charter bus operations over irregular intrastate routes based upon charter bus operations that they were conducting as of December 31, 1983. A hearing was set for September 1993, and proper notice was sent. Six parties protested the applications. Before final determination, all three parties operated under successive temporary authority granted by the Department pursuant to KRS 281.632(2). On May 4, 1994, the Department granted Fisher its third consecutive 180–day temporary authority which later became the basis of Miller's Petition for Declaration of Rights. The Department conducted full hearings in September and October of 1993, with a basic purpose to determine whether the applicants met the grandfather provisions of KRS 281.637(4). Six protesting parties were present at both hearings, but at the October hearing, the chief hearing examiner dismissed all protestants, except Miller, because they had failed to appear personally and present evidence sufficient to confer standing in the case. In a 12–page order in 1994, the Department followed the recommendation of its chief hearing examiner to grant the requested certificates of public

convenience and necessity authorizing charter bus service over irregular intrastate routes based on such operations as of December 31, 1983.

Miller appealed under KRS 281.780 challenging in the Franklin Circuit Court the dismissal of the protestants and the grant of operating authority to Shockey, Fisher and Toby. The circuit court affirmed the actions of the Department in all respects. The Court of Appeals reversed the decision of the circuit court and the order of the department and remanded the matter for an order setting aside the grants of authority and remanding the applications to the Department for further proceedings, including if appropriate, hearings on certificates of public convenience and necessity.

Shockey and Fisher argue before this Court that the Court of Appeals arbitrarily substituted its judgment for that of the Cabinet and failed to give the opinion of the Cabinet proper weight and authority; that the Court of Appeals failed to address or consider the equal protection of the law question; that the Court of Appeals failed to correctly enforce KRS 281.637(4) and failed to consider the arguments pertaining to contemporaneous construction of statutes; that the Court of Appeals failed to consider and apply the legislative intent of the transportation policy contained in Chapter 281 by denying the Cabinet's authority to issue temporary authority in excess of 180 days on a single application. Toby contends that a contemporaneous or practical construction of the statute would indicate a legislative attempt to grandfather all previously existing operating charter bus lines; Toby questions whether the legislature denied them equal protection of the law by enacting special legislation and whether they were deprived of long-standing vested property rights without due process of law.

Miller responds that Toby has improperly asserted points of error before this Court which it did not raise before either the circuit court or the Court of Appeals and that the Court of Appeals correctly interpreted the law and the legislative intent.

I

■ First, we will consider the question of the availability of the grandfather provisions of the statute to Shockey, Fisher and Toby.

The statute, as previously set out, imposes four conditions on a carrier who seeks the benefits of the grandfather clause. The record here indicates that all three appellants fail to meet these conditions insofar as none of them, nor their predecessors in title, were engaged as of December 31, 1983 in the transportation of chartered parties or groups ... as an additional incident of conducting a regular route, common-carrier passenger service ..." as required by KRS 281.637(4). Consequently, they are not included in the grandfather provisions.

The attempt by the Department to include the three appellants under the grandfather provisions was incorrect. The report by the hearing officer which was made part of the final order states in pertinent part: "The fact that the legislature was mistaken as to the actual practice of the department will not and should not defeat the real purpose of KRS 281.637(4)." It is for the courts to interpret the legislative intent of the General Assembly. An administrative agency cannot assume such a responsibility. Certainly, the real purpose of the statute must be given effect and that can best be determined from an examination of the language of the statute.

Accordingly, we must conclude that the Court of Appeals correctly interpreted the intent of the General Assembly. The legislature adopted the statute in question in 1984 in order to bring intrastate charter bus operations within the same requirements of public convenience and necessity as other motor carriers. In order to allow charter bus operators who were engaged in operations as authorized and permitted under 601 KAR 1:120 § 1 as of December 31, 1983 to continue those qualified operations without satisfying the requirements of public convenience and necessity demanded of nonqualifying operators, the legislature included a grandfather clause in KRS 281.637(4). In adopting the statute, the legislature merely codified the department's regulatory language of KRS 601 KAR § 1:120 §§ 1. Neither Shock-

ey, Fisher nor Toby satisfied the requirements of the grandfather charter bus certificate because they did not operate a regular route or common-carrier passenger service.

The Court of Appeals did not commit error or act improperly or arbitrarily in reversing the erroneous interpretation of the grandfather statute by the Department because such an interpretation violated the clear intent of the legislature. Any parties whose rights are affected by the action of an administrative agency is entitled to procedural due process in compliance with Section 2 of the Kentucky Constitution which prohibits the exercise of arbitrary power. The judicial review of an administrative action is also concerned with the question of arbitrariness. *Kaelin v. City of Louisville*, Ky., 643 S.W.2d 590 (1982). We recognize that the Department did not seek review of the decision by the Court of Appeals or its interpretation of the statute.

Shockey and Fisher argue that if this Court affirms the Court of Appeals panel, it should make such ruling prospective in order to avoid injustice or hardship. We find this argument unconvincing because the pre-statutory and post-statutory intrastate charter bus operations were contrary to the provisions of either 601 KAR 1:120 § 1 or KRS 281.637(4). Shockey, Fisher and Toby have not satisfied the requirements necessary to engage in intrastate bus operations in Kentucky. Prospective application of the statute would, in effect, reward them for engaging in unauthorized operations.

## II

The appellants contend that the Court of Appeals arbitrarily substituted its judgment for that of the Department and failed to give proper weight to the determinations by the Department. They claim that greater deference should have been given to the long-standing administrative policy of the department.

The Court of Appeals was not bound to follow the interpretations of the Department when such rulings are clearly erroneous. The testimony indicates that the hearing officer misinterpreted the manner in which the department had applied the statute in its regulation of charter bus carriers prior to the adoption of the statutes. Thus the Court of Appeals correctly determined that the interpretation placed in the final order was clearly erroneous. The Court of Appeals was correct when it determined that there was no evidence introduced at the hearings to establish that the appellants or their respective predecessors in interest were engaged in the transportation of groups as required by the statute. Although Shockey had an irregular route authority, it did not have a regular route certificate from the Kentucky Department of Vehicle Regulation. The record indicates neither Shockey, Fisher nor Toby could meet the necessary requirements for the application of the grandfather clause. Consequently, the Court of Appeals did not arbitrarily substitute its judgment for that of the Transportation Cabinet and did not act arbitrarily.

■ The classification established by the legislature for charter carriers entitled to come within the grandfather clause is reasonable and does not deny the rights of the appellants to equal protection of the law. The right to be included in the statute's defined grandfather class requires more than simply the operation of a charter bus service prior to December 31, 1983. The evidence indicates that Shockey, Fisher and Toby and their predecessors did not engage in qualified pre-statutory charter bus operations so as to qualify. Under the decision of this Court the charter bus certificate application of the appellants will simply be redocketed for an evidentiary hearing by the Department, and at such hearing, each will be entitled to a certificate if they are able to demonstrate their respective services in such a way to satisfy the public convenience and necessity requirements of KRS 281.630.

■ In addition the General Assembly did not infringe on the constitutional right to due process of any of the appellants. Section 196 of the Kentucky Constitution gives the legislature the power to regulate motor carriers. By adopting the grandfather clause contained in this statute, the legislature recognized a legitimate need to protect those charter bus carriers who were engag-

ing in charter bus operations incident to their regular routes prior to December 31, 1983. The legislature did not act arbitrarily in any fashion or violate anyone's right to due process of law.

### III

■ Shockey and Fisher maintain that the Department had the statutory authority to issue successive temporary operating permits for periods in excess of 180 days on the basis that the Department shall apply as far as practical the administrative and judicial interpretations of the Federal Motor Carrier Act. They argue that 49 U.S.C.S. § 10928 and the regulations promulgated thereunder by the Interstate Commerce Commission, 49 CFR § 1163.1, provide for the issuance of successive temporary permits beyond the federal 270–day limitation.

The federal statutes in question were repealed on October 29, 1995 and December 9, 1994, respectively. The rationale in allowing such federal time extensions was based on the complex and lengthy federal procedures. Neither Fisher nor Shockey have shown any evidence that the Kentucky licensing procedures require the granting of temporary operating authorities for periods in excess of 180 days in the aggregqate due to delays in the processing of applications for permanent operating authority.

When we consider the clear and unambiguous language of Kentucky statutes, we find that they contain no language which authorizes the Department to grant successive and continuing grants of operating authority in excess of 180 days.

### IV

■ We hold that the Court of Appeals correctly reversed the circuit court and the Department on the question of standing. KRS 281.625(1)(b) confers standing upon "every authorized carrier, including railroads, serving any part of the route proposed to be served or abandoned by the applicant." Such carriers, being under the regulatory authority of the Department, will be readily ascertainable, and their right to protest will be subject to judicial notice. Each of the protestants asserted through counsel its possession of authority from the Department to perform all or a portion of the operation sought to be performed by the applicants. The Department could and should have determined from its own records whether such assertions were true and if so, the parties could have participated through counsel or otherwise. The protestants do not have the burden of proof. It was error to dismiss them from this action.

### V

It should be noted that Toby argues that the statute in question is unconstitutional, but has failed to provide notice to the Attorney General as required by KRS 418.075 and CR 24.03 of its intention to attack the constitutionality of a statute. *Adventist Health Systems v. Trude,* Ky., 880 S.W.2d 539 (1994), held that this Court would not consider a constitutional challenge when the requirements of KRS 418.075 and CR 24.03 have not been satisfied. Toby did not appear or participate in proceedings before either the circuit court or the Court of Appeals. All matters presented by all of the parties have been given proper consideration, and we find nothing in the Toby arguments which would have convinced us to the contrary.

The opinion of the Court of Appeals is affirmed and this matter is remanded to the Franklin Circuit Court for an order setting aside the grants of authority and remanding these applications to the Department for further appropriate proceedings which may include hearings on certificates of public convenience and necessity.

COOPER, JOHNSTONE, STEPHENS and STUMBO, JJ. concur.

GRAVES, J., dissents by separate opinion, joined by LAMBERT, C.J.

GRAVES, Justice, dissenting.

There is sufficient evidence to show that Appellants have met the requisite elements of KRS 281.637(4), thereby qualifying them as intended users of the "grandfather" clause.

1) Appellants, or their direct predecessors in interest, were engaged in the transportation

of chartered parties or group of persons with a common purpose on or prior to December 31, 1983.

2) A valid certificate issued by the Department was not available to Appellants because such certificates were non-existent. And,

3) Appellants conducted a charter bus service as an additional incident of conducting a regular route, common carrier passenger service. Therefore, the decision of the Court of Appeals should be reversed and Appellants should be granted certificates of authority under KRS 281.637(4).

In the case of charter bus operations, the applicant may either seek a certificate of public convenience and necessity pursuant to KRS 281.630, or, in the alternative, be "grandfathered" through the certificate process by compliance with KRS 281.637(4), which then provided, in part,

> Any person, or his respective predecessor in interest, engaged as of December 31, 1983, in the transportation of chartered parties or groups of persons with a common purpose, pursuant to a valid certificate issued by the department, authorizing the activity as an additional incident of conducting a regular route, common carrier passenger service, ... shall, upon application, be entitled to the issuance of a charter bus certificate to thereafter authorize a continuation of the same operations. Upon petition by any interested party, or upon its own motion if it so desires, the department shall require a hearing upon any such application to establish an applicant's rights thereunder.

In order for Appellants to be eligible to take advantage of the "grandfather" clause in KRS 281.637(4), each must meet the elements provided for in the provision. Each must, 1) have been engaged in the transport of charter parties with a common purpose; 2) have been authorized by the Department pursuant to a valid certificate; 3) have been authorized as an incident to operating a regular route, common carrier service; and 4) have been granted certification only to continue the same operations as before.

Appellants meet all of the elements necessary to qualify under the protection of the grandfather clause. Therefore, the decision of the Court of Appeals should be reversed and Appellants should be granted intrastate charter bus certificates of authority under KRS 281.637(4).

LAMBERT, C.J., joins in this dissent.